UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TVBI COMPANY LIMITED,<br>　　　　Plaintiff,<br>　　v.<br>HONG THOA THI PHAM, et al.,<br>　　　　Defendants. | Case No. 17-cv-05858-SI<br><br>**ORDER GRANTING PLAINTIFF'S APPLICATION FOR WRIT OF ATTACHMENT**<br><br>Re: Dkt. No. 54 |

Currently before the Court is plaintiff TVBI's motion for a writ of attachment. (Dkt. No. 54). The parties appeared before the Court for a hearing on September 21, 2018. For the reasons set out below, the Court GRANTS plaintiff's motion.

**BACKGROUND**

Plaintiff TVBI Company Limited ("TVBI") is a Hong Kong based media company specializing in program licensing and video distribution. Pl.'s Mem. at 2, Dkt. No. 54-1 (CV-17-05858-SI). Defendant Hong Thoa Thi Pham ("Pham") is an individual residing in Santa Clara County, California. Pl.'s Compl. at 2, Dkt.No. 1 (CV-17-05858-SI). In August of 2014, the parties entered into a settlement agreement stemming from TVBI's 2013 fraudulent transfer action against Pham (which was closely tied to plaintiff's 2012 breach of contract action against Pham's business associate, Wang Yu Lin ("Wang")). Pl.'s Mem. at 1, 4. The actions primarily concerned two business entities: San Yang Entertainment, Inc., ("San Yang"), a California corporation, and Lido Night Club ("Lido"), operating in San Jose. *Id*. at 4.

Plaintiff alleges that under the terms of the settlement agreement, Pham was to sell real property located at 814 Alcosta Drive, Milpitas, California 95035, and pay $120,000 of the proceeds to TVBI. *Id.* at 2, 4. In addition, TVBI and Pham became joint shareholders of San Yang Entertainment, Inc., with TVBI owning 92% of the shares, and Pham retaining an 8% interest. *Id.* at 4,6. Per the terms of the settlement agreement, Pham was to continue running Lido Night Club and would receive a salary. *Id.* In addition, Pham was to make minimum monthly payments to TVBI and pay TVBI two-thirds of all net profits from the club's operations. *Id.* at 4-5.

Pham sold the Alcosta Drive property and paid TVBI the proceeds as required. *Id.* at 5. From October 2014 to December 2016, Pham paid TVBI $1,000 per month. Ex. 4. at 1, Dkt. No. 54-6 (CV-17-05858-SI). Pham's payments were to increase to $2,000 per month as of September 2015, but Pham did not increase her monthly payments; she continued paying TVBI $1,000 per month. Pl.'s Mem. at 5. According to plaintiff, on March 16, 2016, unknown to TVBI, Pham filed a Certificate of Dissolution of San Yang, stating the shareholders had voted to dissolve San Yang. *Id*. In February 2017, Pham ceased all payments to TVBI. *Id.* TVBI alleges it never received San Yang's business statements, profits, or accompanying payments as per the terms of the settlement agreement. *Id*.

TVBI filed the instant action October 12, 2017, alleging breach of fiduciary duty, conversion and embezzlement, and breach of the settlement agreement. Pl.'s Compl. at 1. On August 10, 2018, TVBI filed the current application for a writ of attachment. Dkt. No. 54 (17-CV-05858-SI). TVBI seeks to secure $127,400 with: (1) Pham's real property interests (except leaseholds with unexpired terms of less than one year); (2) accounts receivable, chattel paper, and general tangibles of a trade, business, or profession arising from Pham's conduct (except any claim less than $150); (3) money on the premises where Pham conducts a trade, business, or profession; (4) Pham's deposit accounts; (5) Pham's interest in 539 Westlake Drive residence

("Westlake Property"); (6) Pham's interest in the property located at 13009 Ansell Court in Garden Grove ("Garden Grove Property"); and (7) property fraudulently transferred (including the liquor license). Pl.'s Mem. at 12-14; Writ of Attach. at 2, Dkt. No. 54-11 (17-CV-05858-SI). The parties appeared before the Court for a hearing on September 20, 2018.

**LEGAL STANDARD**

When reviewing an application for right to attach, a federal court applies the law of the state in which it sits.[1] *See* Fed. R. Civ. P. 64; *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.,* 970 F.2d 552 (9th Cir. 1992). Under California law, an attachment may be issued only in an action on claims for money, based on an express or implied contract, where the total amount of claim is not less than $500. Cal. Civ. Proc. § 483.010(a) (2001). Additionally, a court may only issue a right to attach if: (1) the claim upon which the attachment is based is one upon which an attachment maybe issued; (2) the plaintiff has established the probable validity of the claim upon which the attachment is based; (3) the attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based; and (4) the amount to be secured by attachment is greater than zero. Cal. Civ. Proc. § 484.090 (2001). In addition, the plaintiff must provide a "description of the property . . . [that is] reasonably adequate to permit the defendant to identify the specific property sought to be attached." Cal. Civ. Proc. § 484.020(e) (1982). Further, the applicant must provide "a statement that the plaintiff is informed and believes that such property is subject to attachment." *Id*.

**DISCUSSION**

The parties dispute whether TVBI has submitted an application for a writ of attachment

---

[1] In addition, the parties agreed that California law governed the Employment Agreement and the settlement agreement. Ex. 2 at 5; Ex. 3 at 4.

3

that meets the statutory requirements outlined under sections 483.010(a), 484.090, and 484.020 of the California Code of Civil Procedure.

**I.       Procedural requirements for a writ of attachment.**

The statutory requirements for writs of attachment "must be strictly followed or no rights will be acquired[.]" *Anaheim Nat'l Bank v. Kraemer*, 120 Cal. App. 63, 65-67 (1932) (finding that a defect in an affidavit's wording was sufficient to discharge a writ). An application for a writ of attachment must include the following: (1) a statement showing that the claim is one upon which attachment may be issued; (2) a statement stating the amount sought to be secured; (3) a statement that the attachment is sought for the sole purpose of securing recovery; (4) a statement that the "applicant has no information or belief that the claim is discharged [or stayed] in a proceeding under Title 11 of the United States Code (Bankruptcy)"; and (5) a description of the property sought to be attached. Cal. Civ. Proc. Code § 484.020 (1983). The fourth requirement is satisfied when the applicant "included in the Application Form [] a statement that the Plaintiff has no information that the claim is discharged in a bankruptcy proceeding[.]" *Homes & Land Pub., Ltd. v. ApartmentNet Corp.*, 100 F. Supp. 2d 1248, 1251 (S.D. Cal. 2000). Lastly, a writ is only issued if it contains "[a] copy of the application and of any affidavit in support of the application." Cal. Civ. Proc. § 484.040(c) (1974). The affidavit must "show[] that the plaintiff on the facts presented would be entitled to a judgment on the claim upon which the attachment is based [on the facts presented.]" Cal. Cal. Proc. Code § 484.030 (1974).

TVBI initially requested to attach $127,400, but conceded to reduce the amount to $55,000 after acknowledging it filed an insufficient affidavit. Pl.'s Reply at 2:5-7. Although inadequate to support the entirety of its claims, TVBI's affidavit does support its claim for $55,000 in unpaid monthly settlement payments that Pham owed under Section 2(e). *Id*. Thus, the Court finds no issue with TVBI's concession to reduce its claim.

4

Pham contends that TVBI's application for writ of attachment is facially defective, and thus, fails to meet the procedural requirements for issuance at any amount. Def.'s Opp'n to Pl.'s Writ for Attach. at 4:15-24 Dkt. No. 58-1 (CV-17-05858-SI). The Court does not find Pham's argument valid. First, where there is no issue with the affidavit itself. An incorrect reference to an affidavit does not render an entire application defective. Second, references to judicial notice requests[2] and affidavits referencing background information "filed elsewhere" are not grounds to discharge a writ of attachment. Pl.'s Reply at 4:10-11. Lastly, the Court finds that, contrary to Pham's argument, TVBI's application for a writ of attachment contains the required language concerning Chapter 11. Pl.'s at Reply at 4:1-2; Pl.'s Appl. for Writ of Attach 1, Dkt. No. 54 (CV-17-05858-SI). Thus, TVBI's application meets the procedural requirements for a writ of attachment.

## II. Substantive requirements for a writ of attachment.

### A. A claim upon which an attachment may be issued.

An "attachment may be issued only in an action on claims for money, based on an express or implied contract[.]" Cal. Civ. Proc. § 483.010(a) (2001). Writs of attachment are "unauthorized where the foundation of the action is a demand for equitable relief . . . ." *Hallidie v. Enginger*, 175 Cal. 505, 509 (1917). If the "gravamen of the action . . . is . . . for the recovery of . . . money upon a contract . . . an attachment will issue regardless . . . of equitable powers . . . incidentally

---

[2] TVBI's requests for judicial notice are mainly related to background information about TVBI's issues with the former majority shareholder of Lido, Wang. Pl.'s Reply at 2:14-19; 4:10-12; Pl.'s Mem. at 2:14-19; 3:2-7, 9-17, 21-28; 4:10-14. Under section 201(b) of the Federal Rule of Evidence the Court may take judicial notice of facts not subject to reasonable dispute (i.e. facts generally known or facts that can be "accurately and readily determined from sources whose accuracy cannot be reasonably questioned"). Fed. R. Evid. § 201(b). TVBI requests judicial notice of related pleadings and judgments from a prior case (4:12-cv-05734-SBA). Pl.'s Req. for Judicial Notice at 1-2, Dkt. No. 21 (17-cv-05858-SI). The Court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006). Therefore, the Court grants TVBI's request for judicial notice of these prior pleadings.

involved." *Bennet v. Superior Ct.*, 218 Cal. 153, 161 (1933).

Here, TVBI states that attachment may be issued on its breach of contract claim. Pl.'s Mem. at 7:21-10:3; Pl.'s Reply at 4:17-21. Pham argues that the "the basis of the lawsuit arises" from her breach of fiduciary duties as the director of San Yang. Def.'s Opp'n at 4:20-21, 5:11-13. Pham contends that the language of Section 2(e) establishes that San Yang was required to make $1,000 and $2,000 payments to TVBI, and therefore, Pham's failure to make payments was a breach of her duty as a director, not as a natural person. Pl.'s Reply at 4:23-24; Def.'s Opp'n at 5:15-21; Ex. 2 at 3, Dkt. No. 54-4 (CV-17-05858-SI). Pham asserts that she is subject to protection from personal liability under the business judgment rule, section 309 of the California Corporate Code. Def.'s Opp'n at 5:11-13; Cal. Corp. Code § 309 (1987).

The Court finds Pham's assertions unconvincing for the following reasons. First, Pham's payment history shows that Lido Enterprises, solely owned by Pham, made payments to TVBI. Ex. 4 at 1. In addition, the only mention of Pham acting as the director of Sang Yang is on March 16, 2016.[3] Pl.'s Req. for Admis. at 12:12-16 Dkt. No. 54-9 (CV-17-05858-SI); Ex. 5 at 1, Dkt. No. 54-7 (CV-17-05858-SI). On the present facts, the Court finds that Pham was acting in her capacity as a natural person, and therefore, TVBI's claim did does not arise out of a breach of fiduciary duty. Thus, TVBI's breach of contract claim is a claim upon which attachment may be issued under section 483.010(a) of the California Code of Civil Procedure.

## B. Establishment of probable validity.

A claim has "probable validity" where it is more likely than not that the plaintiff will

---

[3] The accuracy of Pham's statement that she was the sole director is questionable. Under section 212(a) of the California Corporations Code, the minimum number of directors for a corporation with two shareholders is two. Cal. Corp. Code § 212(a) (2012). San Yang has only two shareholders, TVBI and Pham, therefore, Pham's statement that she was the only director is suspect. Pl.'s Mem. at 4,6.

obtain a judgment against the defendant on that claim. Cal. Code Civ. Pro. § 481.190 (1997). "[A] court must review the evidence before it and 'consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation.'" *Homes & Land Pub., LTD v. ApartmentNet Corp.*, 100 F. Supp. 2d 1248, 1252 (S.D. Cal. 2000) (quoting *Loeb & Loeb v. Beverly Glen Music, Inc.*, 166 Cal. App. 1110, 1120 (1985)) (holding that a plaintiff established the probable validity of its claim by putting forth factual evidence that contradicted the defendant's defenses). Under California law, in addition to establishing "a prima facie case for breach of contract [,] . . . [the plaintiff] must also show that the defenses are 'less than fifty percent likely to succeed.'" *Blastrac v. Concrete Solutions & Supply*, 678 F. Supp. 2d 1001, 1005 (C.D. Cal. 2010) (holding that the plaintiff failed to "effectively address" the defendant's "factually-supported" failure of performance defense) (quoting *Pet Food Express, Ltd. v. Royal Camin USA Inc.,* No. 2009 WL 2252105 at 5 (N.D. Cal. 2009)). Thus, "the issuance of a writ of attachment [is] strictly construed against the applicant" who has the burden to establish the probable validity of her claim by a "preponderance of the evidence." *Balstrac* at 1004.

### 1. The existence of a valid contract.

Under California law, a breach of contract occurs when a party has "establish[ed] (1) The existence of a valid contract [;] (2) [A party's] performance or excuse for nonperformance[;] (3) The other party's breach and[;] (4) resulting damages." *Harara v. ConocoPhilips Co.*, 375 F. Supp. 2d. 905, 906 (N.D. Cal. 2005).

Contracts are valid where: "(1) Parties [are] capable of contracting; (2) The[y] consent; (3) [There is a] lawful object[]; and (4) A sufficient cause or consideration." *Marshall v. Weisel*, 242 Cal. App. 2d 191, 196 (1966); Cal. Civ. Proc. § 1550 (2018).

Under California law, consideration "is an essential element of a contract." *CRV Imperial-Worthington, LP v. Gemini Ins. Co.*, 770 F. Supp. 2d 1074, 1077 (S.D. Cal. 2010). Consideration exists where "the parties [] exchange promises that represent legal obligations." *Scottsdale Ins.*

7

*Co. v. Essex Ins. Co.*, 98 Cal. App. 4th 86, 94 (2002). If there is no adequate consideration, then this may be grounds to rescind the contract. Cal. Civ. Proc. §§1689(b)(1)-(4) (1961). Where the main purpose of a contract is "unlawful . . . or so vaguely expressed as to be . . . unascertainable [] . . . the entire contract is void." Cal. Civ. Proc. § 1598 (1872). However, if the "unlawful" portion of the contract is ancillary to the central purpose and "the contract has several distinct" purposes, then the unlawful portion is void and the rest of the contract is valid. Cal. Civ. Proc. § 1599 (1872).

Here, Pham disputes TVBI's assertion that "[t]he existence of a valid contract, the settlement agreement, is not disputed[.]" Pl.'s Mem. at 10:24-25; Def.'s Opp'n at 8:13-16. Pham presents the following arguments: (1) The settlement agreement "fails for lack of adequate description of mutual consideration[;]" (2) Section 2(e) is void for "irredeemable vagueness"; and (3) Pham disputes whether she owes TVBI profit distributions under Section 2(f). Pl.'s Mem. at 10:24-25; Def.'s Opp'n at 7:13-28.

Consideration fails where the main purpose of the contract is so vague as to be unascertainable. Cal. Civ. Proc. § 1598. TVBI provides a specific and factually based argument that the meaning of the mutual consideration was not vague. TVBI asserts that Pham understood the contract from its inception to its completion: Pham was "represented by counsel" during the execution of the contract; Pham's counsel "expressly approved the settlement agreement"; and the settlement agreement was "jointly drafted[.]" Pl.'s Reply at 5:14-17. TVBI argues that Pham's performance of the settlement Agreement evidences her comprehension of the terms. *Id.* at 5:13-19. TVBI that has successfully established its likely probable success over Pham's defense void for vague consideration.

In addition, Pham's legal representation during the execution of the settlement agreement and Pham's performance of her contractual requirements under Section 2(e) places doubt on her allegations that Section 2(e) is vague. Ex. 2 at 5; Pl.'s Reply at 5: 14-19. Pham argues that

8

Section 2(e) is "vague . . . to the extent that it . . . is unclear what will happen" after TVBI's five-year requirement that Pham make payments of $2,000. Ex. 2 at 3. However, TVBI argues, as discussed above, that Pham demonstrated an understanding of her obligations of Section 2(e) as a whole because she successfully performed the $1,000 payments as required under the settlement agreement. The timeline is clearly delineated. Section 2(e) states that TVBI will receive the payment "until the termination of the Employment and Management Agreement[.]" Ex. 2 at 3. Under Section I of Employment Agreement "the term of th[e] agreement will be for five (5) years from the effective date." Ex. 3 at 1, Dkt. No. 54-4 (17-CV-05858-SI) (capitalization omitted). Thus, the Employment Agreement, and therefore, the term of the payments is five years. Def.'s Opp'n at 7:27; Ex. 3 at 1. Moreover, the dictionary definition of "until" is "up to the time that[.]" *Merriam–Webster Online Dictionary*, retrieved Aug. 31, 2018, from https://www.merriam-webster.com/dictionary/until. Therefore, Section 2(e) reads that the payments will be made up to the "termination of the Employment and Management" or five years. Ex. 2 at 3; Ex. 3 at 1.

### 2. Plaintiff's rebuttal to the defendant's affirmative defenses.

Waiver "is the intentional relinquishment of a known right after knowledge of the facts." *Roesch v. De Mota*, 24 Cal. 2d 563, 572 (1944). Waiver may exist where the injured party knows of the breach and continues to accept performance. *Kern Sunset Oil Co. v. Good Roads Oil Co.*, 214 Cal. 435, 439-41 (1931). The right to collect debt is not waived by a party's delay in enforcing payment. *Middlecamp v. Zumwalt*, 100 Cal. App. (1929); *see also Hunt v. Smith*, 25 Cal. App. 3d 807, 819 (1972) (stating that partial payments do not discharge "what is due on an obligation"). Absent new consideration or a modifying writing, "forgiveness of a portion of past installments will not . . . reduce future installments." *Hunt* at 819. The asserting party must establish waiver by clear and convincing evidence. *City of Ukiah v. Fones*, 64 Cal. 2d 104, 107-08 (1966).

Here, Pham asserts that TVBI's failure to request full payment after fifteen months of

9

partial payment "constitutes a waiver of the increase[.]" Def.'s Opp'n at 6:26-7:2. TVBI, however, states that it "acted promptly after learning of Pham's" dissolution of San Yang and transfer of funds. *Id.* at 5:22-24. In any event, according to the holdings in *Middlecamp* and *Hunt*, TVBI's acceptance of partial payment does not waive its right to full payment. At most, TVBI's continued acceptance of Pham's noncompliant checks after being made aware of her breach constitutes waiver of timely payment, but not a discharge of obligation. Therefore, TVBI has met its burden to rebut Pham's affirmative defenses.

### C. The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.

The attachment "cannot be sought for a purpose other than the recovery on the claim upon which the attachment is based[.]" Cal. Civ. Proc. § 484.090(c) (2001). In California, attachment is not for an improper purpose where the defendant has not challenged the purpose and nothing suggestive of such a purpose exists in the record. *Hamilton Beach Brands, Inc. v. Metric & Inch Tools, Inc.*, 614 F. Supp. 2d 1056, 1063–64 (C.D. Cal. 2009); *see also Cummings v. Worktap, Inc.*, No. 17-CV-06246-SBA (SK), slip op. at 3 (N.D. Cal. Feb. 2, 2018)(holding there was no improper purpose where a plaintiff provided no evidence in support of its claim of ulterior motive).

Improper purpose exists where there is "abuse, by a misuse of the judicial process for a purpose other than that which it was intended to serve." *Adams v. Super. Ct.*, 2 Cal. App. 4th 521, 530 (1992). "[M]ere ill will against the adverse party in the proceedings does not constitute an ulterior or improper motive." *Ion Equipment Corp. v. Nelson*, 110 Cal. App. 3d 868, 876 (1980); *see also Pimentel v. Houk*, 101 Cal. App. 2d 884, 886 (1951).

Here, Pham alleges that TVBI seeks attachment to "harass" Pham and perform a "debtor's examination[.]" Def.'s Opp'n at 9:17; 10: 4-7. Pham states that TVBI's "recitation of the facts was a transparent hatchet job" and TVBI isn't interested in "a few thousand dollars." *Id.* at 9:17-

18, 10: 2-3. TVBI counters that it has no ulterior motive, but that if it did, under *Pimentel*, such a purpose would be insufficient to "constitute a 'wrongful purpose[]'" Pl.'s Reply at 6:5-9.

The Court finds TVBI's recitation of facts allegedly "paint[ing] Ms. Pham as a base villain" insufficient to support a claim of harassment or improper purpose. Def.'s Opp'n at 9:18-19. Pham offers no substantive evidence that TVBI has misused the judicial process or sought the writ of attachment for a purpose other than the recovery of damages for breach of contract.

### D. Description of the property sought to be attached.

If the defendant is a "natural person[,]" the applicant's description of the property she seeks to attach must be "reasonably adequate" so as to allow the defendant identify this property for the purpose of "determin[ing] whether . . . to make a claim of exemption." Cal. Civ. Proc. § 484.020(e); *Bank of America v. Salinas Nissan, Inc.*, 207 Cal. App. 3d 260, 268 (1989). The descriptions may be broad and "comprehensive" so that the applicant may "target[] . . . everything an individual defendant owns." *Kadison v. Wilson*, 197 Cal. App. 3d 1, 5 (1987).

Here, TVBI seeks to attach broad categories of Pham's property, including all of Pham's deposit accounts, and her interest in real property such as the Westlake Property (which is held in trust), Garden Grove Property, and the transferred liquor license. Pl.'s Mem. at 12-14; Writ of Attach. at 2. Pham claims TVBI's description of her Westlake Property is inadequate because TVBI did not name her trust. Def.'s Opp'n at 9:23. TVBI offers no comment on the adequacy of its description.

The Court finds that the description adequate. TVBI gives a specific address, 539 Westlake Drive in San Jose, to define the property. Pl.'s Mem. at 14:15-16. Pham identified the property despite TVBI's failure to name the trust. Thus, the description is of a level which has allowed defendant, Pham, to identify the property. Therefore, TVBI has provided a reasonably adequately describes the property it seeks to attach.

11

### E. Establishment of exemption from attachment.

The "defendant has the burden of proving that the property is exempt." Cal. Civ. Proc. § 484.070(g) (2011). To meet its burden, the defendant must meet the same evidentiary standard as the plaintiff did in supporting attachment of the defendant's property. Cal. Civ. Proc. § 484.040 (1977). Further, if a defendant fails to make a timely exemption claim, then the claim may be waived. Cal. Civ. Proc. § 484.070(a) (2011). Similarly, if the applicant fails to oppose the defendant's exemption claim, then "no writ of attachment shall be issued as to the property claimed to be exempt." Cal. Civ. Proc. § 484.070(f) (2011).

In California, courts have held "that assets in a revocable trust are effectively the property of the settlor." *Travelers Cas. & Sur. Co. of Am. v. K.O.O. Constr., Inc*., No. 16-CV-00518-JCS, 2017 WL 2473125, at 8 (N.D. Cal. 2017); *see also Kadison*, 197 Cal. App. at 5 (1987) (holding that because a trust is not a natural person, there is "no justification for excluding the trust estate from [] prejudgment attachment"). Thus, "property held in a revocable trust for the benefit of the settlor may be treated as property of the settlor for the purpose of attachment." *Id.*

Here, Pham argues that her Westlake property held in trust cannot be attached. Def.'s Opp'n at 9:22-28. In addition, she argues that TVBI failed to prove that Pham's "transfer of investment property to trust . . . was done with any fraudulent intent." Def.'s Opp'n at 9: 25-28. TVBI counters that there is "well established law" supporting its attachment of Pham's trust. Pl.'s Reply at 7:3. TVBI cites *Travelers* in support of its argument. *Id.* at 7:5-10.

In considering relevant cases such as *Kadison* and *Travelers*, the Court finds that TVBI may attach Pham's property held in trust. First, as in *Kadison*, the Westlake Property is subject to attachment because TVBI's attachment is based on a contract entered into by a trustee, Pham. Second, under *Travelers*, Pham's Westlake property may be attached because it is held in her trust. Lastly, Pham's argument that TVBI must prove fraudulent transfer is erroneous. The underlying claim upon which attachment is sought is not a claim or fraudulent transfer; it is for a breach of

contract. Thus, Pham has not established that her Westlake property is exempt from attachment.

### F. Amount of property sought to be attached.

If "plaintiffs attach property of a value greater than that demanded by their complaint, the 'excess' property must be released." *Barceloux v. Dow*, 174 Cal. App. 2d 170, 174 (1959). At the hearing on the issuance of a writ of attachment, the Court may determine "that the value of the defendant's interest in the property described in the plaintiff's application clearly exceeds the amount necessary to satisfy the amount to be secured by the attachment." Cal. Civ. Proc. Code § 482.120 (1976). If the Court makes this determination, it may "direct the order of levy on the property described in the writ or restrict the amount of the property to be levied upon[.]" *Id.*

TVBI has reduced the amount it seeks to attach from $127, 400 to $55,000. Pl.'s Reply at 2:5-7. It follows that the amount of property that TVBI seeks to attach must also be reduced. TVBI acknowledges that it seeks to attach "broad categories" of Pham's property. Pl.'s Mem. 13:21-27. The Court finds that the value of Pham's property in the categories more than likely exceeds $55,000. In addition, TVBI seeks to attach the following real property: (1) Pham's interest in the Garden Grove Property; (4) fraudulently property transferred (including the liquor license) and; (3) Pham's interest in the Westlake Property. Pl.'s Mem. at 12-14; Writ of Attach. at 2. Two of the categories involve real estate in Silicon Valley which has "soaring real estate prices." Eli Rosenberg, *In Silicon Valley, $800,000 Will Get You This Burned Shell of a House*, Washington Post (Apr. 12, 2018), https://www.washingtonpost.com/news/post-nation/wp/2018/04/12/in-silicon-valley-800000-will-get-you-this-burned-shell-of-ahouse/?noredirect=on&utm_term=.83f95b26c8ec. In addition, on September 18, 2015, the Westlake Property sold for $1,030,000. Redfin, Redfin Estimate for 814 Alcosta Dr, https://www.redfin.com/CA/Milpitas/814-Alc osta-Dr-95035/home/1609833 (last visited Sept. 18, 2018). Therefore, it is likely that Pham's interest in the real property TVBI seeks to attach exceeds $55,000.

Accordingly, the Court grants plaintiff's securement of $55,000 with Pham's Westlake Property and Garden Grove Property only. In the event that the value of the two properties is insufficient to secure $55,000, then the plaintiff may return to the Court.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby grants plaintiff's motion for a writ of attachment in the reduced amount of $55,000, and with respect to the Westlake and Garden Grove properties only.

**IT IS SO ORDERED**.

Dated: September 26, 2018

_____
SUSAN ILLSTON
United States District Judge